# LNM Marketing FZE.

**Contract No.: LM 5833**

## Sale and Purchase Contract

**LNM Marketing FZE** a company operating under the laws of JAFZA, Dubai and having its place of Business at Jebel Ali Free Zone, Dubai, United Arab Emirates (hereinafter referred to as "Seller") on the one hand and M/S. **WELSPUN GUJARAT STAHL ROHREN LIMITED**,  a company duly organized under the laws of **INDIA** (hereinafter referred to as "Buyer"), on the other hand, (hereinafter collectively referred to as "the Parties"), have concluded the present Contract (hereinafter referred to as "the Contract"), whereby Seller will sell and Buyer will buy  subject to  the terms and conditions stated  hereunder.

1. **DEFINITIONS.** The following definitions shall apply to all terms and conditions of this Contract:

**CARRIER**   As defined under INCOTERMS 2000

**CONTRACT**  means  the  present  document  and  any  Annexure,  Addenda,  and amendments thereto which are agreed to and signed by both Parties.

**DELIVERY** means Delivery as defined under INCOTERMS 2000.

**GOODS**  means the goods (including any installment of the goods or any parts of them) which Seller is to supply in accordance with this Contract as specified in the Addendum.

**INCOTERMS** means  the  year  2000  edition  of  the  International  Rules  for  the Interpretation of Trade Terms published by the International Chamber of Commerce.

**MILL** means  the  Mill  or  plant  of  manufacture  of  the  Goods  as  mentioned  in  the addendum.

2. **DESCRIPTION OF SALE**

   The Seller agrees to sell and the Buyer agrees to purchase the Goods in accordance with the product description, specifications, quality, size, grade, quantity, packing, marking, prices, payment terms, Delivery terms and schedules, and special conditions as specified in the Addenda to this Contract signed by both Buyer and Seller and which forms an integral part of the Contract.

**3. PRICE AND PAYMENT**

3.1 The Price shall be the Price(s) listed in the Addendum to this Contract and shall be valid for the period set forth in the Addendum.

3.2 Seller shall notify in writing to the Buyer of any change or extension as mutually agreed upon between Buyer and Seller of the validity period of the price.

Exhibit

1

# LNM Marketing FZE

**Contract No.: LM 5833**
**Date: 11.07.2004**                                    <u>Page 2   out of 10</u>

3.3 All Prices for the Goods delivered under this Contract are in U.S. Dollars per metric ton and are understood to be delivered as per the Delivery Description in the Addendum including the cost of packing and marking.

3.4   If Buyer wrongfully fails to take Delivery of the Goods, or delivery of goods is delayed due to a cause beyond Seller's reasonable control, Buyer shall be liable to Seller for the value of the Goods plus any other related costs including storage, handling, demurrage, etc.. at any time after Seller has notified Buyer that the Goods are ready for calling forward or collection or Seller has tendered Delivery of the Goods.

3.5 Terms of Payment: Buyer shall pay the total invoice as per Annexure A.  Time is of the essence for payment of Goods.

3.6 Seller shall be entitled to charge Buyer interest on a daily basis, on overdue payments at the rate of twelve percent (12%) per annum or LIBOR plus five percent (5%), whichever is higher.

3.7 Buyer shall not be entitled to withhold payment of any amount payable to Seller under the Contract because of any previously disputed claim of Buyer in respect of faulty Goods or any other alleged breach of the Contract or any other contract between Buyer and Seller, nor shall Buyer be entitled to set-off against any amount payable to Seller under the Contract any moneys which are not then presently payable by Seller or for which Seller disputes liability.

3.8 All Prices shall be deemed exclusive of VAT and any other taxes.  VAT, sales taxes, and other levies, which may be applicable at the time of delivery in the country of origin of the goods, will be on Buyer's account .

3.9 All taxes and duties in the destination country, including Anti-dumping duties at time of delivery will be to the account of the Buyer.

3.10 Additional terms of payment are detailed in Annexure  (A)

3.11 Buyer's obligation to pay any amounts due under this Contract shall survive beyond the term of this Contract.

3.12 Buyer's payment obligations will be satisfied only when the full invoice amount in US Dollars (unless another currency is agreed in writing by the Parties) is received in Seller's designated bank account. A failure on the part of Buyer to secure any required approvals from any foreign exchange authority applicable to Buyer for the conversion or remittance of any portion of the full invoice amount shall not excuse Buyer from its payment obligations.

# LNM Marketing FZE

**Contract No.: LM 5833**
**Date: 11.07.2004** — Page 3   out of 10

3.13 Title of the goods shall remain with the Seller until the full invoice amount is received as per clause 3.12. Until the title passes the Buyer shall hold the goods in trust, for the Seller.

## 4. GENERAL TERMS AND CONDITIONS

### 4.1 DELIVERY

As per Annexure B

### 4.2 INSURANCE

Buyer shall be responsible for obtaining insurance of the goods.

### 4.3 INVOICING

The invoice value of the Goods will be as per actual weight based on a Certificate of Quality and appropriate document from the Mill showing the mill scale reading of quantity, net for net, which invoice Seller shall deliver and Buyer shall accept as final and binding. The Mill shall determine the Certificate of Quality and the appropriate document showing the Mill scale reading or quantity or as maybe agreed in the addendum.

### 4.4 SELLER'S WARRANTIES

4.4.1 Goods sold as "non-prime" or Goods accepted by Buyer which Seller and Buyer agree to be "non-prime" are sold in their actual state, as seen, without warranty, with all faults whether or not the Goods have been inspected by Buyer prior to Delivery. Any statement, specification, description, or other information provided by the Seller in respect of such Goods is given in good faith but the Seller accepts no responsibility nor gives any warranty for its accuracy. In no circumstances will the Seller be under any obligation to replace or make good such Goods or entertain any claim whatsoever in respect thereof. If the Buyer shall re-sell such Goods the Buyer shall ensure that a provision in similar form to this condition is incorporated in the re-sale agreement unless prior to re-selling the Goods, the Buyer caused the Goods or such part of the Goods as the Buyer re-sells to comply with a recognized specification or standard.

4.4.2 Seller shall not be responsible for and offers no warranty in relation to, the insertion of any words in any shipping documentation or document of title, clauses such as "rust stained", "rust spotted", "wet before shipment", "unprotected cargo" or other similar clauses, and no claim can be entertained in this respect unless otherwise expressly agreed in writing by Seller.

4.4.3 Where the Goods are either packed or protected in the manner specified in the Contract, or if there is no such specification and the Goods are delivered without

Case 4:10-cv-02813   Document 1-1   Filed in TXSD on 08/06/10   Page 4 of 21

# LNM Marketing FZE

sufficient packing or protection. Seller shall not be liable for any damage to or deterioration of the Goods during carriage or beyond the point of delivery.

4.4.4 Where any claim or portion of a claim which has been accepted by Seller in respect of the Goods which is based on quality as set out in the Addendum to this Contract is notified to Seller, Seller shall be entitled to replace the Goods (or part in question) or at Seller's side discretion, credit Buyer with the proportionate part of the price as mutually agreed but Seller shall have no further liability to Buyer whatsoever.

4.4.5 Subject to these provisions, Goods supplied by Seller will comply with the specifications and standards set forth in the Addendum to this Contract. Seller makes no additional warranty that the Goods are of merchantable quality or fit for a particular purpose.

4.4.6 In respect of the Buyer's use of the goods, the Buyer shall indemnify Seller against all claims, costs, and expenses of any nature whatsoever which may arise from product liability or otherwise.

4.4.7 Seller's liability and Buyer's exclusive remedy for any cause of action is limited to the invoice amount.

4.4.8 The seller shall not be liable for consequential loss or loss of profit.

## 4.5 CONTRACTUAL REPRESENTATIONS AND WARRANTIES

In addition to any other representations contained herein, each Party represents and warrants to the other that as of the date of this Contract:

a) Such Party is a duly organized company, validly existing and in good standing under the laws where it is established;

b) Such Party has all requisite power, authority and approvals required to enter into this Contract and will have all requisite power, authority, and approvals to perform fully each and every one of its obligations under this Contract;

c) Such Party has taken all action necessary to authorize it to enter into this Contract and such Party's representative whose signature will be affixed to this Contract and will be fully authorized to sign each such contract, and to bind such Party thereby;

d) This Contract shall constitute the legal, valid, and binding obligations of such Party;

e) Neither the execution of this Contract, nor the performance of such Party's obligations hereunder, will conflict with, or result in a breach of, or constitute a default under, any provision of the Articles of Association, By-Laws or similar documents of such Party, or

# LNM Marketing FZE

**Contract No.: LM 5833**
**Date: 11.07.2004**

a law, rule, regulation, authorization, or approval of any government agency or body having jurisdiction over the Party, or of any contract, agreement, or obligation to which it is a Party or subject.

## 4.6 INSPECTIONS AND CLAIMS

4.6.1 Claims, if any, on quality shall be limited to the non-fulfillment of specification and standards, as specified in the Addendum to this Contract and/or the technical protocol attached to the Addendum and forming an integral part thereof.

4.6.2 Claims, if any, on quality shall be settled by negotiations directly between Buyer and Seller before recourse to Clause 4.8. Any such claims shall be presented within 75 (seventy five) days from the date of Delivery. The claim shall be accompanied by the following documents:

a) Contract number and date and Addendum number and date;

b) Certificate of Quality and appropriate document showing the mill scale reading of quantity which sets forth the complete description of the Goods, packing number and the packing condition, weight, and marking;

c) An independent surveyor's certificate from a commercial inspecting firm giving the details of sections 4.6.2(a) to 4.6.2(b) above and the nature and extent of any defect. The commercial inspecting firm shall be a competent, reputable, internationally-authorized organization agreeable to both Seller and Buyer. The inspection of the Goods is to be arranged by Buyer at his own cost.

4.6.3 If Buyer wants to appoint a surveyor to carry out quality and /or quantity inspection, Buyer shall give fifteen (15) days' notice to Seller before the inspection. Seller reserves the right to present its representative and/or the Mill's representative during the inspection and/or to inspect the reported material and to take any required samples for testing.

4.6.4 Seller's liability on any claims shall be limited to the amount of discrepancy and, if applicable, to the provisions set out in the technical protocol.

4.6.5 In all events, Seller's liability regarding any legitimate claims is limited to the invoice amount of the part of the Goods which is proven to be defective.

## 4.7 FORCE MAJEURE

4.7.1 Neither Seller nor Buyer shall be held responsible for any delay in delivering or in taking Delivery of any of the Goods to be supplied under this Contract if either Party is

# LNM Marketing FZE

**Contract No.: LM 5833**
**Date: 11.07.2004**

prevented from the performance of its obligations either in whole or in part for reasons of Force Majeure (or in case of the Seller, the Mill suffers Force Majeure).

4.7.2 Force Majeure shall for this purpose mean any circumstances beyond the control a Party including but not limited to acts of God or the Public Enemy, war, rebellion, civil disturbance, fire, accident, severe weather conditions, supply shortages, unavailability or interruptions of transport to the Delivery point, power failures, compliance with any order, act or any regulation of any Government or Government agency or local authority, national or official strike, lockouts or other trade disputes which prevent the performance of the Contract, and any obligations thereunder, while the existence of Force Majeure continues.

4.7.3 The affected Party must give written notice to the other Party within twenty-one (21) days from the beginning date of the Force Majeure occurrence.

4.7.4 When such an event of Force Majeure occurs, the affected Party shall use its best efforts to overcome any cause that prevents, hinders, or delays performance of its obligations and shall, in so far as is practicable, continue to perform its obligations hereunder. In the case of Force Majeure, the parties shall immediately consult in order to find an equitable solution thereto, and shall use their best efforts to minimize the consequences of such Force Majeure. If the Force Majeure event lasts for more than two (2) months, this Contract shall be terminated unless otherwise agreed by the Parties. However, the contract may not be terminated earlier than this for reasons of Force Majeure, unless the Parties agree in writing.

4.7.5 Neither Party shall claim any compensation from the other Party on account of the Force Majeure.

4.7.6 Notwithstanding the foregoing, nothing contained in this Contract shall relieve Buyer of the obligation to pay in full the amounts due according to the terms of this contract.

## 4.8 CHOICE OF LAW AND DISPUTE RESOLUTION

4.8.1 The Parties agree that any dispute or disagreement in relation to the Contract shall be first amicably resolved by mutual discussions. If the dispute or disagreement remains unresolved for sixty (60) days, either Party may refer the dispute or disagreement to Arbitration in accordance with the UNCITRAL Arbitration Rules at present in force. There shall be one arbitrator and the appointing authority shall be the London Court of International Arbitration. The place of arbitration shall be London, England and the English language shall be used in the arbitration proceedings. The parties hereby waive any rights under the Arbitration Act 1996 (as amended) to appeal against any arbitration award to, or to seek determination of a preliminary point of law by, the High Court.

# LNM Marketing FZE

**Contract No.: LM 5833**
**Date: 11.07.2004**

4.8.2 Notwithstanding the above, in the event of a sale to a Buyer which is registered under Chinese law or otherwise subject to the Chinese law, Seller has the sole right to elect for arbitration to be held in Beijing under the China International Economic and Trade Arbitration Commission which Rules are deemed to be incorporated by reference into this clause.

4.8.3 The Contract shall otherwise be governed by and construed in accordance with the laws of England.

## 4.9  INTEGRATION AND INCOTERMS

4.9.1 The Parties agree that there are no other commitments or representations or understandings binding on either Party which affect this Contract except those specified herein or accepted as amendments, Annexure or Addendum to this Contract.   Any amendments to the Contract, including any Annexure or Addendum, are valid only if made in writing, signed, and stamped by duly authorized representatives of both Parties.

4.9.2 To the extent that there is any conflict between the Contract and the Annexure and Addendum, first the Addendum, then the Annexure and then the Contract will control.

4.9.3 INCOTERMS 2000 are incorporated into this Contract unless otherwise specified herein.

## 4.10 ASSIGNMENT AND DELEGATION

Buyer has no right to assign or delegate to a third party any rights or obligations under this Contract without the written consent of Seller.

## 4.11 LANGUAGE OF THE CONTRACT

The Contract shall be concluded in English and in two originals, one original for each Party.

## 5. PERIOD OF THE CONTRACT

This Contract is valid from **11-July to 31-December 2004.**



# LNM Marketing FZE

**Contract No.: LM 5833**
**Date: 11.07.2004**                                                Page 8   out of 10

## 6. LEGAL ADDRESS AND BANK DETAILS

**SELLER:**

LNM Marketing FZE
P.O. Box - 17619
LOB 15 523; Jebel Ali Free Zone,
Dubai, United Arab Emirates.

Seller's Bank:

| 1.BENEFICIARY | : LNM MARKETING FZE |
| ACCOUNT NO. | : 035 070127 211 |
| BANK | : HSBC BANK MIDDLE EAST |
| | JEBEL ALI BRANCH |
| | DUBAI,UAE. |
| | SWIFT ADDRESS: BBMEAEAD |

CORRESPONDENT BANK: HSBC BANK, USA, ROUTING NO. ABA 105
                    A/C NO. 00038199 of HSBC BANK MIDDLE EAST
                    SWIFT ADDRESS : MRMDUS33

| 2.BENEFICIARY | : LNM MARKETING FZE |
| ACCOUNT NO. | : 0102 7080956 01 |
| BANK | : STANDARD CHARTERED BANK |
| | JEBEL ALI BRANCH |
| | DUBAI,UAE. |
| | SWIFT ADDRESS: SCBLAEADXXX |

CORRESPONDENT BANK: STANDARD CHARTERED BANK NEW YORK
                    ACC NO. 3582088678001  OF STANDARD
                    CHARTERED BANK DUBAI.
                    SWIFT ADDRESS :SCBLUS33XXX



# LNM Marketing FZE

**Contract No.: LM 5833**
**Date: 11.07.2004**                                    Page 9   out of 10

**BUYER:**

| | |
|---|---|
| Name | : M/S. WELSPUN GUJARAT STAHL ROHREN LIMITED |
| Authorized representative | : ARUNAV BARUAH |
| Address | : VILLAGE VADADLA, NEAR DAHEJ, TALUKA VAGRA, BHARUCH-DAHEJ ROAD, DIST. BHARUCH. GUJARAT-392 130 |
| Tel No | : +91-22-5661-2600 |
| Fax No | : +91-22-2490-8020 |
| Person to be contacted | : ARUNAV BARUAH |
| Bank | : BANK OF BARODA |
| Bank address | : CFS BRANCH, BALLARD PIER, MUMBAI-400001 |
| Account No | : CS903 |



# LNM Marketing FZE

Contract No.: LM 5833
Date: 11.07.2004                                                Page 10 out of 10

## 7. ENCLOSED DOCUMENTS

The following attachments form an integral part of the Contract:

1.  Annexure A - Terms of Payment

2.  Annexure B 3 – Delivery Terms

3.  Annexure C 2 – Shipping Terms

**SIGNED BY THE PARTIES**

**SELLER**

**LNM Marketing FZE, Jebel Ali, Dubai**

By :                    Y.P.Kumar

Its:                    Director (Sales)

Date

Stamp

**BUYER**

M/S. WELSPUN GUJARAT STAHL ROHREN LIMITED

By:                     Arunav Baruah

Its:                    Senior Manager (Marketing & Co-Ordination)

Date

Stamp

# LNM Marketing FZE.

**Contract No.: LM 5833**

**Date: 11.07.2004**                                           Page 1 out of 1

### ANNEXURE A – 1
### TERMS AND MODE OF PAYMENT
### (LETTER OF CREDIT)

1.Payment terms will be as specified in the Addendum(s) to the contract.

2.1. Payment shall be due immediately upon delivery of goods or as agred in the Addendum.

2.2. Payments against this Contract will be made in US Dollars with a confirmed irrevocable, sight Letter of Credit in favour of Seller to be opened by a First Class International Bank acceptable to Seller. Payment shall be made immediately by Telegraphic Transfer or SWIFT. The Letter of Credit shall be advised to Seller's nominated Bank.

2.3. The Letter of Credit shall be in the same form as advised by the Seller and must be established by Buyer in favor of Seller within the time stipulated in the Addendum to the Contract. Seller reserves the right to cancel or extend the Contract, including its Annexures and Addendum, after expiration of the aforesaid period.

3. All bank charges, excluding charges for acceptance advice on the Letter of Credit and negotiations, shall be to the account of Buyer.

4. All payments made by Buyer shall be in US Dollars and made at Seller's Bank to the account referenced below:

**1. BENEFICIARY**           : **LNM MARKETING FZE**
   **ACCOUNT NO.**           : **035 070127 211**
   **BANK**                  : **HSBC BANK MIDDLE EAST**
                               **JEBEL ALI BRANCH**
                               **DUBAI,UAE,**
                               **SWIFT ADDRESS: BBMEAEAD**
**CORRESPONDENT BANK: HSBC BANK, USA, ROUTING NO.ABA 105**
                  **A/C NO. 00038199 of HSBC BANK MIDDLE EAST**
                  **SWIFT ADDRESS: MRMDUS33**

**2. BENEFICIARY**           : **LNM MARKETING FZE**
   **ACCOUNT NO.**           : **0102 7080956 01**
   **BANK**                  : **STANDARD CHARTERED BANK**
                               **JEBEL ALI BRANCH**
                               **DUBAI,UAE.**
                               **SWIFT ADDRESS: SCBLAEADXXX**
**CORRESPONDENT BANK: STANDARD CHARTERED BANK NEW YORK.**
                  **ACC NO. 3582088678001 OF STANDARD CHARTERED BANK,**
                  **DUBAI, UAE.**
                  **SWIFT ADDRESS: SCBLUS33XXX**

5. Subject to clause 2.1, documents for negotiation of Letter of Credit:

A.     Duplicate railway bill(s) / FCR;

B.     Commercial invoice issued by Seller;

C.     Certificate of Quality and appropriate document showing the mill scale reading of quantity issued by the Mill;

D.     Certificate of Origin issued by the Mill.

Seller:

Date

STAMP

Buyer:

Date

STAMP

# LNM Marketing FZE

**Contract No.: LM 5833**                 **Delivery Terms (CFR) - Annexure B -3**

**Date: 11.07.2004**                                          Page 1of 3

## Annexure B3 - Delivery Terms ( CFR)

### 1.1  DELIVERY

1.1.0.  Shipping terms and conditions: CFR as  per Annexure C - 2 attached.

1.1.1.  The shipment schedule will  be subject to the condition that the Seller  has received advance payment or is in possession of the Letter of Credit as the case may be and within the time schedule satisfactory in all respects to the Seller.

1.1.2  The Goods shall be considered as delivered by Seller and accepted by Buyer according to the gross and net weight shown in the Bill of Lading,  based on Seller's mill scale reading of the quantity and quality shown in the Certificate of  Quality issued by the mill.

1.1.3  a) The  Goods shall be considered as delivered by the  Seller and accepted by Buyer when it passes the ship's rail. The Seller shall deliver the Goods on  board  of vessel nominated by the Seller at  the  designated Port of shipment  for delivery  to  Port of discharge.

   b)  The date of  Bill of Lading is considered to be the date of Delivery.

   c)  Bill of Lading with Remarks such as "Atmospheric Rust", "Wet beforeLoading", "Some loose and broken straps" and clauses of similar nature are acceptable.

1.1.4 If Seller indicates within seven (7) days after the Contract Delivery date set forth in the Addendum that Delivery of the Goods has been prevented or hindered due to any cause beyond Seller's reasonable control then the Delivery date or periods shall be altered as required by Seller taking into account the cause of the delay in consultation with the Buyer.

1.1.5  In case of any default by Seller with respect to any such partial Delivery or installment the Buyer shall not be entitled to treat the Contract as terminated with regards to any balance or installment remaining to be delivered without consultation with the Seller.

1.1.6  Seller shall have the  right to suspend/cancel/non-comply/short close any orders if Buyer is in default on any payments due to the Seller.

### 1.2  PASSAGE OF RISKS AND TITLE OF GOODS

1.2.1  Subject to the Clause 3.13 Risk of loss of or damages of the Goods shall pass from Seller to Buyer when the Goods have passed the ship's rails at the designated port of

# LNM Marketing FZE

**Contract No.: LM 5833**                    **Delivery Terms (CFR) - Annexure B -3**

**Date: 11.07.2004**                                              Page 2of 3

shipment.

1.2.2   The title to the goods shall pass from the Seller to the Buyer only after the Seller has negotiated the documents and has received payment of the full invoice value of the goods shipped.

1.2.3   The buyer must obtain at his own risk and expense any import license and registration, other official authorization and carry out wherever applicable all custom formalities for the import of the Goods and for their transit through any country.

## 1.3.0   QUANTITY CLAIMS

1.3.1   Claims, if any, on Quantity shall be settled as follows:

a)     All claims relating to quantity will be settled on the basis of weighment at loading port only;

b)     Any claim on quantity will be subject to weight franchise of 0.5 % ;

c)     In case Buyer appoints the internationally recognized surveyor acceptable to Seller for carrying out scale weighment at port of shipment, quantity in the Bill of Lading will be ascertained as follows:

(i)     If there is a difference of not more than 0.5% between the weight as per the Seller's mill scale and the weight as load port scale, mill scale weight will be considered as final.

(ii)     If the difference between the weight as per Seller's mill scale and the weight as per load port scale exceeds 0.5%, mill scale weight shall be adjusted to the extent of difference over 0.5% for arriving at weight in the Bill of Lading.

d)     Seller shall provide to Buyer the Bill of Lading in compliance with the above clauses.



# LNM Marketing FZE

**Contract No.: LM 5833**                                    **Delivery Terms (CFR) - Annexure B -3**

**Date: 11.07.2004**                                                                Page 3of  3

1.3.2   If the Buyer wants to appoint surveyor for carrying out quality and/or quantity
inspection, Buyer shall give fifteen (15) days' notice to Seller before the inspection.
Seller reserves the right to present its representative and/or the mill's representative
during the inspection.

**SIGNED BY THE PARTIES**

**SELLER**

**LNM Marketing , Jebel Ali, Dubai**

By :                        **Y.P. Kumar**

Its:                         **Director (Sales)**

Date

Stamp

**BUYER**

M/S. WELSPUN GUJARAT STAHL ROHREN LIMITED

By:                         **Arunav Baruah**

Its:                        **Senior Manager (Marketing & Co-Ordination)**

Date

Stamp

# LNM Marketing FZE

Contract No.: LM 5833                    Shipping terms – Annexure C-2
Date : 11.07.2004                                    Page 1 of 2.

## ANNEXURE C - 2

### Shipping Terms and Conditions

### CFR (Liner out terms)

**1.0   Fixing of Vessel for Shipment**

1.1   Seller shall endeavor to effect shipment of the Goods in suitable geared vessel(s). In the event of shipment of Goods by overage vessel(s), overage insurance, if any, incurred by Buyer shall be to Seller's account up to a maximum of 1% of the value of the Goods shipped, subject to Buyer furnishing necessary documentary evidence.

1.2   After fixing the vessel for shipment, Seller shall intimate to Buyer by cable/telex/fax (i) Name of the vessel (ii) Length Overall (LOA), Beam, Draft (iii) Flag (iv) Year of built (v) Number of hatches/derricks and (vi) quantity planned to be loaded in the vessel.

1.3   Seller shall not be responsible for any contamination of the Goods after the same have passed the ship's rails.

**2.0   Service of Notice of Readiness of the vessel for discharging of the Goods (i.e., Master's Notice of Readiness)**

2.1   Buyer shall intimate to Seller by cable/fax, before sailing of the vessel, the name and address of the party on whom the Notice of Readiness of the vessel for discharge of cargo shall be served by the Master of the vessel at the destination port.

2.2   The Notice of Readiness of the vessel to discharge the Goods at the destination port shall be served by the Master of the vessel on Buyer/its representatives, during the normal office working hours from 8:00 a.m. to 18:00 p.m. from Monday to Saturday, when the vessel is within the port limits or in roads and in free pratique whether in berth or not.

2.3   Buyer shall be responsible for delays in berthing of vessel/s in case it has been caused due to delays in completion of import documentation. Any time lost shall be to the Buyer account and computed as per the governing charter party.

**3.0   Discharging Terms.**

3.1   The cargo to be discharged as is customary at the port of discharge on the basis of liner out under hook.

3.2   Cargo shall be discharged into the custody of the port in the normal course.

3.3   Buyer will not be responsible for any delay, if the discharge of the cargo is affected due to the reasons of Force-majeure

a)   War, rebellion, tumult, political disturbance, insurrection.

SELLER                                             BUYER

# LNM Marketing FZE

**Contract No.: LM 5833**
**Date : 11.07.2004**

**Shipping terms – Annexure C-2**
Page 2 of 2.

b) Lockouts, strikes, riots, civil commotion, epidemics, quarantine, land slips, floods, frost or snow, bad weather.

c) Stoppage of work by long shore men, tug boat men or other hands essential to the working of the vessel or discharge of cargo from the vessel.

d) Accidents at the Wharf.

e) In the event of breakdown of gears/cranes/winches of the vessel by reason of disablement or insufficient power, the period of inefficiency shall not count as lay time.

Seller: _____

Buyer: _____

Dtd

Stamp _____

*Attn: Mr. Binual*
*Fax: 2490 502 0/ Code 919*

# LNM Marketing FZE.

Contract No.: LM 5833                                                    Extension
Date : 15.12.2004                                                          Page 1 of 1

### AMENDMENT No.1
### (EXTENSION)

**Clause No.5 to the Contract.**

**Period of the Contract : The present Contract is renewed and validity
is extended up to 31- December 2005.**

**SELLER**

LNM Marketing FZE, Jebel Ali, Dubai

By :                          V.P.Kumar

Its:                          Director (Sales)

Date:

Stamp

**BUYER**

M/S. WELSPUN GUJARAT STAHL ROHREN LIMITED

By

Its:                          Arunav Baruah

Date                          Senior Manager (Marketing & Co-Ordination)

Stamp                         18.01.2005

# LNM Marketing FZE.

Contract No.: LM 5833                                    Extension
Date : 15.12.2004                                        Page 1 of 1

### AMENDMENT No.1
### (EXTENSION)

**Clause No.5 to the Contract,**

Period of the Contract : The present Contract is renewed and validity

is  extended up to   31- December  2005.

**SELLER**

LNM Marketing FZE, Jebel Ali, Dubai

By :                    Y.P.Kumar

Its:                    Director (Sales)

Date

Stamp

**BUYER**
M/S. WELSPUN GUJARAT STAHL ROHREN LIMITED

By:                     Arunav Baruah

Its:                    Senior Manager (Marketing & Co-Ordination)

Date

Stamp



## LNM Marketing FZE
*(Formerly IK International FZE)*
*Member of The Mittal Group*

<u>DATE</u>: <u>15th March, 2005</u>.

M/S. WELSPUN GUJARAT STAHL ROHREN LIMITED
VILLAGE VADADLA, NEAR DAHEJ, TALUKA
VAGRA, BHARUCH-DAHEJ ROAD,
DIST. BHARUCH, GUJARAT-392 130

Dear Sir/ Madam

Att'n: Arunav Baruah

<u>Sub</u>: <u>Introduction of new contract reference numbers.</u>

Please be informed that consequent upon implementation of SAP ERP system in LNM Marketing, Fze., Dubai, UAE, all fresh addenda issued hereafter will bear **Contract reference : S051089**

All addenda issued prior to 07 Mar,'05 will continue to be processed as usual in the existing legacy system and upon completion of shipments and obligations, the **Old Contract : LM5833** will cease to be used. However, the Contract will continue to remain in force under the new reference given above, without any change to agreed terms and conditions.

Further, addenda numbers for addenda processed through the SAP system will not continue in the same existing serial order and will follow a fresh serial numbering generated by the SAP system.

Please acknowledge receipt of this notification and if you have any questions, please get in touch with the undersigned or the respective Sales Managers.

Thanking you,

Yours sincerely

For and on behalf of
LNM Marketing, Fze.

Y.P.Kumar
Director (Sales)

---

**Lease Office Building 15523, PO Box 17619, Jebel Ali Free Zone, Dubai, United Arab Emirates**
*Tel:* + 971 4 8811 662/ 665   *Fax:* + 971 4 8811 663/ 664   *E-mail (Corporate):* iki@emirates.net.ae

*(Formed Pursuant to Law No. 9 of 1992 with Limited Liability)*

5833



# LNM Marketing FZE.

Contract No.: 5031069
Date : 15.12.2005

Extension
Page 1 of 1

### AMENDMENT No.2
### (EXTENSION)

**1.Clause No.8 to the Contract**

Period of the Contract : The present Contract is renewed and validity

is extended up to 31- December 2006.

2. All the remaining provisions of the present contract and its previous

amendments, remain unchanged.

**SELLER**

**LNM Marketing FZE, Jebel Ali, Dubai**

By :

Its:

Date

Stamp

**BUYER**
**M/S. WELSPUN GUJARAT STAHL ROHREN LIMITED**

By:              Arunav Baruah

Its:              Senior Manager (Marketing & Co-Ordination)

Date    18/01/06

Stamp

(Sədf dˤexɪɒᵺɛᴈxᴐᴐⳑϯ) (ᴈ) bɘϯᴉɯᴉꞁ nɘɿɦoɿ ꞁʜɒϯƨ ϯɒɿɐįuϱ nuqɘꞁɘw

# LNM Marketing FZE.   5833

Contract No.: S051089

Date : 15.12.2005

Extension

Page 1 of 1

### AMENDMENT No.2
### (EXTENSION)

**1. Clause No.5 to the Contract.**

**Period of the Contract :** The present Contract is renewed and validity is extended up to 31- December 2006.

**2. All the remaining provisions of the present contract and its previous amendments, remain unchanged.**

**SELLER**

LNM Marketing FZE, Jebel Ali, Dubai

By :

Its:

Date

Stamp

**BUYER**

M/S. WELSPUN GUJARAT STAHL ROHREN LIMITED

By:            Arunav Baruah

Its:            Senior Manager (Marketing & Co-Ordination)

Date

Stamp